UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 25-2968 JGB (JCx)** | Date | November 25, 2025 |
|---|---|---|---|
| Title | *Alex Tabatabaee v. Kristi Noem, et al.* | | |

Present: The Honorable    JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):    Attorney(s) Present for Defendant(s):

None    None

**Proceedings:**   Order: (1) GRANTING Petitioner's Motion for a Preliminary Injunction and for a Temporary Restraining Order (Dkt. No. 3) (IN CHAMBERS)

    Before the Court is Petitioner Alex Tabatabaee's ("Petitioner") motion for a preliminary injunction and for a temporary restraining order. ("Motion," Dkt. No. 3.) The Court held a hearing on this matter on November 14, 2025. ("Hearing," Dkt. No. 10.) After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion.

## I. BACKGROUND

    On November 6, 2025, Petitioner filed a petition for writ of habeas corpus. ("Petition," Dkt. No. 1.) That same day Petitioner filed the Motion and a request for appointment of counsel. (Motion; "Request," Dkt. No. 4.) This Court issued a minute order on November 6, 2025 enjoining the government from deporting Petitioner or transferring Petitioner outside of the jurisdiction of the Central District of California pending a ruling in this case, granting the Request, ordering the Government ("Respondent") to respond by November 12, 2025, and setting a hearing for Friday, November 14, 2025. (Dkt. No. 8.) The Government filed an opposition on November 12, 2025. ("Opposition," Dkt. No. 8.) Petitioner filed a reply on November 13, 2025. ("Reply," Dkt. No. 9.) On November 14, 2025, the Court held a hearing and ordered Petitioner's counsel to file a declaration by Petitioner, upon which the Court would issue its ruling. (Hearing.) On November 24, 2025, Petitioner filed his declaration. ("Tabatabaee Decl.," Dkt. No. 11.) The Court now issues its ruling.

## II. FACTS

Petitioner immigrated to the United States from Iran in 1997 as a teenager. (Motion at 3.) The Government ordered Petitioner deported in 2009 following a criminal conviction in 2004. (Id.) Petitioner was in ICE custody from November 2009 to March 2010, after which ICE placed him on supervision. (Tabatabaee Decl. ¶ 3(b).) In 2012, Petitioner was convicted of another criminal offense. (Id. ¶ 3(c).) Following the completion of his prison term in October 2024, Petitioner was released from prison and placed on state parole. (Id.) The Government placed petitioner on immigration supervision on October 7, 2024. (Id.) On July 27, 2025,[1] Petitioner reported to ICE for his monthly check-in meeting. (Id. ¶ 3(d).) Following a parole check-in, ICE agents arrested Petitioner. (Id.) The Government did not tell Petitioner why his supervision was revoked or give him an opportunity to respond to the reason his supervision was revoked. (Id.) Although the Government has attempted to deport Petitioner, Iran has not cooperated with the Government's efforts and informed Petitioner they would not accept him. (Motion at 3.) Prior to Petitioner's detention, he acted as the primary caretaker for his mother. (Tabatabaee Decl., ¶ 3(f).)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") may be issued upon a showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 61(b)(1)(A). The purpose of a TRO is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a TRO is identical to the standard for issuing a preliminary injunction. Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 690 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, attorneys, and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d).

Courts in the Ninth Circuit may consider the Winter factors on a sliding scale and grant an injunction where the plaintiff raises "serious questions going to the merits, and a balance of

---

[1] The Court notes that the Petition states the date of re-detention as June 27, 2025. (Petition at 3.) The Court assumes the date discrepancy is the result of a typo, and takes the date provided in Petitioner's sworn declaration. (Tabatabaee Decl. ¶ 3(d).)

hardships that tips sharply toward the plaintiff" if "the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (noting that the latter two elements are "the other two elements of the Winter test").

## IV.  DISCUSSION

To secure a TRO or a preliminary injunction, Petitioner must show that he is likely to succeed on the merits, likely to suffer irreparable harm, and that the balance of equities and the public interest tip in their favor. Winter, 555 U.S. at 20. Likelihood of success on the merits "is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Because both parties have had an opportunity to file briefs, the Court converts the TRO into a preliminary injunction.

**A.     Jurisdiction**

Petitioner challenges his detention by ICE and seeks habeas relief pursuant to 28 U.S.C. § 2241. (Petition at 1.) "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody." Preiser v. Rodriguez, 411 U.S. 475, 484, 93 S. Ct. 1827, 1833, 36 L. Ed. 2d 439 (1973). Accordingly, the Court's habeas jurisdiction is properly invoked.

**B.     Likelihood of Success on the Merits**

"Likelihood of success on the merits is a threshold inquiry and is the most important factor." Env't Prot. Info. Ctr. v. Carlson, 968 F.3d 985, 989 (9th Cir. 2020). Petitioner argues that his detention violates his Fifth Amendment substantive and procedural due process rights. (Petition at 4-7; Motion at 2.) "Freedom from imprisonment . . . lies at the heart of the liberty" that the Fifth Amendment's Due Process Clause "protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Id. at 693. As a result, the government can only detain individuals outside of the criminal context in "certain special and 'narrow' nonpunitive 'circumstances.'" Id. at 690 (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). Under 8 U.S.C. § 1231, the "post-removal-period detention statute," there are two permissible goals for post-removal detention: "preventing flight" and "protecting the community." Id. Because flight risk is attenuated where removal is not possible and indefinite detention on the basis of protecting the community is allowed under only limited circumstances, the Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. Otherwise, "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." Id. at 690.

Furthermore, the Supreme Court has separately recognized that an individual on parole, which is analogous to an order of supervision, has a liberty interest under the Fourteenth

Amendment's Due Process Clause requiring "some informal procedural guarantees." Morrissey v. Brewer, 408 U.S. 471, 482-83 (1972); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973) (extending Morrisey to probation revocation); Young v. Harper, 520 U.S. 143, 145 (1997) (extending Morrissey to Oklahoma's preparole program because it is also "a kind of parole"). This liberty interests arises even though a revocation of parole lies outside of the protections of criminal proceedings. Morrissey, 408 U.S. at 480. "[T]he loss of liberty entailed is a serious deprivation requiring that the parolee be accorded due process." Gagnon v. Scarpelli, 411 U.S. 778, 781 (1973). Further emphasizing that this liberty interest does not arise exclusively in the criminal context, the Supreme Court compared the right guaranteed parolees to a "preliminary hearing" to the right guaranteed welfare recipients prior to the termination of their benefits. Morrissey, 408 U.S. at 485 (citing Goldberg v. Kelly, 397 U.S. 254, 267-271 (1970)). Although the Due Process Clauses of the Fifth and Fourteenth Amendments cannot always be read uniformly, see Fuld v. Palestine Liberation Org., 606 U.S. 1, 13 (2025), the Court is convinced that the liberty interest protecting parolees from revocation without a hearing applies with equal force to noncitizens under orders of supervision. See J.O.L.R., Petitioner, v. Minga Wofford, Mesa Verde ICE Processing Ctr. Facility Administrator, No. 1:25-CV-01241-KES-SKO (HC), 2025 WL 2908740, at *5 (E.D. Cal. Oct. 14, 2025) ("The Court finds that petitioner has a protected liberty interest in his release."); Rodriguez Diaz v. Garland, 53 F.4th 1189, 1205 (9th Cir. 2022) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Finally, it is well-established that governmental agencies must follow their own regulations. Morton v. Ruiz, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required."). Here, the government has promulgated two regulations to govern orders of supervision. ICE may only revoke an order of supervision if: "(i) The purposes of release have been served; (ii) The alien violates any condition of release; (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate." 8. C.F.R. § 241.4(l)(2). ICE officials must provide an individual whom ICE decides to re-detain with a copy of the decision "with the reasons for the continued detention." 8 C.F.R. § 241.4(d). Subsequently, ICE must provide the noncitizen "an initial informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241(l)(1). Multiple courts have interpreted 8 C.F.R. § 241(l)(1) as requiring an informal interview when ICE revokes a noncitizen's order of supervision. See Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (collecting cases); Grigorian v. Bondi, No. 25-CV-22914-RAR, 2025 WL 2604573, at *9 (S.D. Fla. Sept. 9, 2025) ("The opportunity to contest detention through an informal interview is not some ticky-tacky procedural requirement; it strikes at the heart of what due process demands.").

Following the Supreme Court's decision in Zadvydas v. Davis, ICE issued 8 C.F.R. § 241.13 to govern custody determinations for noncitizens subject to a final order of removal whose removal period has expired and where there is not a significant likelihood of removal. Continued Detention of Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967 (Nov. 14, 2001).

ICE can only re-detain a noncitizen subject to 8 C.F.R. § 241.13 if the noncitizen has violated the conditions of his release or if ICE has determined "on account of changed circumstances . . . there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). In the latter case, ICE must provide the noncitizen an "informal interview promptly . . . to afford the alien an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.13(i)(3). Thus, if a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l) and must similarly provide them an informal interview.

Thus, the Court finds that under the Fifth Amendment's Due Process Clause Petitioner has a right to be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures. The government responds that there is now a significant likelihood of removal to Iran. (Opp. at 6.) The evidence the Government proffers in support of its argument is that the "government is currently arranging for [Petitioner's] removal." (Id.) However, the Court agrees with Petitioner that this statement fails to demonstrate a "significant likelihood that [he] may be removed in the reasonably foreseeable future." (Reply at 3 (citing 8 C.F.R. § 241.13(i)(2)).)

The Court now turns to the question of what procedures are appropriate to protect Petitioner's liberty interest. Under Mathews v. Eldridge, the Court considers three factors:[2] "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Under the first factor, courts have regularly described a petitioner's interest in remaining out of custody as "substantial." Diaz v. Kaiser, No. 3:25-CV-05071, 2025 WL 1676854 (N.D. Cal. June 14, 2025). The weight of the factor grows as a party remains out on bond for an extended period of time. Morrissey, 408 U.S. at 482. Here, Petitioner was released on an order of supervision in March 2010. (Tabatabaee Decl. ¶ 3(b).) Petitioner was placed in criminal custody at some point in or after 2012, and was placed back in immigration supervision on October 7, 2024 after the completion of his prison sentence. (Id. ¶ 3(c).) Prior to Petitioner's re-detention on July 27, 2025, Petitioner was the primary caretaker for his mother. (Id. ¶ 3(f).) Petitioner's interest is significant.

As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high with no process offered to Plaintiff during his re-detention and no rationale

---

[2] The Court follows the Ninth Circuit, which regularly employs Mathews v. Eldridge in due process challenges in the immigration context. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022).

provided for his re-detention.  This risk is heightened in the context of civil immigration detention, which must be "nonpunitive in purpose."  Zadyvdas, 533 U.S. at 690.

As to the third factor, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017).  Although the Ninth Circuit's holding arose in a challenge to a different statute governing immigration detention, 8 U.S.C. § 1226(a), the Court finds the Ninth Circuit's reasoning equally availing here.  The government's previous decision to release Petitioner on an order of supervision demonstrates that the government found that Petitioner was not a danger to the community and that his presence in future immigration proceedings could be "ensured by . . . alternative conditions."  Id.

Accordingly, the Court concludes that Petitioner has demonstrated a likelihood of success on the merits.

C.  **Irreparable harm**

Petitioner is suffering irreparable harm because Petitioner is likely being detained in violation of his constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  Hernandez v. Sessions, 872 F.3d 976, 994 (9th Cir. 2017) (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)).

Furthermore, as the Ninth Circuit has explained, "immigration detention" results in "subpar medical and psychiatric care . . . , [] economic burdens . . . on detainees and their families . . . , and [] collateral harms to children of detainees."  Hernandez, 872 F.3d 976, 995 (9th Cir. 2017).  Petitioner's detention is impacting his ability to serve as the primary caretaker for his mother.  (Tabatabaee Decl. ¶ 3(f).)  Therefore, Petitioner faces irreparable harm.

D.  **Balance of equities and public interest**

Where the government is the opposing party, balancing of the equities and the public interest merge.  See Nken v. Holder, 556 U.S. 418, 435 (2009).  Thus, the Court asks whether any significant "public consequences" would result from issuing the preliminary injunction.  Winter, 555 U.S. at 24.

As other courts have recognized, "the public has a strong interest in upholding procedural protections against unlawful detention."  Vargas v. Jennings, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020).  And the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  Zepeda v. U.S. Immigr. & Nat. Serv., 753 F.2d 719, 727 (9th Cir. 1983).  Likewise, in the absence of an injunction, Petitioner is and will continue to experience prolonged detention, and he will be unable to serve as his mother's primary caretaker.  Therefore, the Court, like many

courts across the country, finds that the only reasonable relief is Petitioner's release. See Grigorian, 2025 WL 2604573, at * 10 (collecting cases).

Due to the minimal harms suffered by the government, the Court will not require a security.

## V. CONCLUSION

For the reasons described above, the Court **GRANTS** the preliminary injunction. The Court **ORDERS** Respondent to immediately release Petitioner from their custody.

**IT IS SO ORDERED.**